[Jones v. Chaffin.]

# Jones v. Chaffin.

*Action to recover  Warehouse Charges.*

1. *Action to recover warehouse charges; debt not released by destruction of property stored.*—Where, in the purchase of cotton from the owner who had stored it in a warehouse, the purchaser assumed the payment of the charges for storage, but it was the custom of warehousemen in that particular place not to collect the storage charges until the cotton was ordered out of the warehouse, the fact that the cotton so purchased was accidentally burned while in the warehouse, and before it was ordered out, does not release the purchaser thereof from the payment of the storage charges due at the time of the fire; and an action to recover such charges from the purchaser is maintainable by the warehouseman.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

This was an action of assumpsit; brought by the appellee, E. G. Chaffin, against the appellant, V. D. Jones, to recover warehouse charges for storage of cotton, and was originally commenced in a justice of the peace court.

The facts of the case are sufficiently stated in the opinion.  There was judgment for the plaintiff, and defendant appeals.

J. D. GARDNER, for appellant.

R. L. WILLIAMS, *contra.*—The plaintiff had a warehouseman's lien on the cotton for the storage.—Schouler on Bailments, 524; Edwards on Bailments, 307; Redfield on Carriers, 557; *Steinman v. Wilkins*, 42 Amer. Dec. 254, and cases cited in notes; *Alden v. Carver*, 13 Iowa 253; *Lee v. Salter*, Hill & D. 163.

The destruction of the cotton by fire did not release the defendant from liability to the warehouseman for charges of storage.—*Cole v. Tyng*, 76 Amer. Dec. 735; *Steinman v. Wilkins*, 42 Amer. Dec. 254; Edwards on Bailments, 308; Tudor's Lead. Cas. 695, 707; 3 Parsons on Contracts, 243–248; *McFarland v. Wheeler*, 26 Wend. 467.

Under the custom and usage as to the payment of warehouse charges, shown by the evidence to exist in Troy, the defendant assumed the payment of the storage when he purchased the cotton, and is responsible in the present action.—*M. & E. R. R. Co. v. Kolb*, 73 Ala. 396; *Waring v. Grady*, 49 Ala. 465; *Herring v. Skaggs*, 73 Ala. 446; *'Leigh v. M. & O. R. R. Co.*, 58 Ala. 165; *Upton v. Suffolk Mills*, 59 Amer. Dec. 163; Lawson on Usages and Customs, § 144; *Clark v. Van Northwick*, 1 Pick. 343; Lawson's Rights & Remedies, 469, § 266; 40 Amer. Rep. 662; 65 Amer. Dec. 201; 83 Amer. Dec. 656; 87 Amer. Dec. 622; 18 Amer. Dec. 726; 2 Amer. Dec. 360; 46 Amer. Dec. 261. The case of *Conestoga Cigar Co. v. Finke*, 13 Lawyers Rep. Anno. 430, is conclusive of the case at bar.

HEAD, J.—Action by appellee, a warehouseman doing business in Troy, Ala., to recover charges for storage of cotton. There were 56 bales which had been stored by farmers and by them sold to defendant, while in the warehouse, and delivered to defendant by endorsement and delivery of the warehouse receipts. To simplify expression we will say the whole lot, 56 bales, was stored by A. B. the producer, and by him subseqently sold to defendant, as above stated. According to the custom of this and the other warehouses in Troy, when cotton was stored, a receipt was executed for the same, showing marks, numbers, weights, date of receipt, from whom received, and stipulating that the cotton was held subject to the receipt only, on paying customary charges and all advances, (acts of Providence and fire excepted.) A stub was retained by the warehouseman, showing by whom the cotton was stored and to whom the receipt was issued. He kept no other account showing who stored the cotton. The evidence shows that when cotton is stored, the warehouseman's charge of fifty cents, per bale, accrues, for which the owner is entitled to have the storage for thirty days, if desired; and also to have the service of the warehouseman, if demanded, in delivering the cotton at the compress, depot or other place in the city, designated by the owner. If the cotton remains stored longer than 30 days, an additional charge of 25 cents per bale accrues; and so for each additional 30 days, or fraction thereof. It was the custom and prac-

tice of warehousemen, in Troy, not to demand payment of these charges until the cotton was ordered out of the warehouse, on the production of the receipt, and the cotton would not be surrendered or delivered by the warehouseman, without the payment of the charges. It is a further fact that, by custom and usage, the market price of cotton in Troy was fixed with reference to warehouse charges, and allowance therefor made by way of diminution of the price; and further, that when stored cotton was sold by transfer and delivery of the warehouse receipt, the purchaser assumed the charges—the seller having virtually paid him the amount thereof by way of reduction of price. Now, as we have said, A. B. a farmer stored with plaintiff 56 bales of cotton, taking the customary receipt. Thereafter, he sold the cotton to defendant, by endorsing and delivering the receipt. Thereafter, defendant still holding the receipt, the warehouse and the cotton burned, the latter never having been ordered out. The controversy grows out of the custom and practice of warehousemen to forbear collection of their charges until the cotton was ordered out, and to require payment then to be made before surrender of the cotton—the defendant taking the position that the meaning and intent of this custom are and were that there was no collectible debt for the charges until the owner ordered the cotton out of the warehouse, and that as the cotton had been accidentally destroyed without being ordered out, the debt was forever destroyed. We think this an extreme view to take of the practice the warehousemen pursued. When A. B. stored the cotton, the relation of debtor and creditor, in respect of these charges, arose between him and the plaintiff. He became indebted to the plaintiff for the charges; and that relation continued so long as the cotton remained on storage, and A. B. became indebted for and bound to pay all charges accruing from time to time, without regard to any change in the ownership of the cotton, unless plaintiff, with knowledge, actual or constructive, of the change in ownership, expressly or impliedly agreed to release A. B., and accept the obligation of the new owner to pay the charges. For this indebtedness, the law gave the plaintiff a lien on the cotton, as warehousemen, from the inception of its delivery to him, under which he had a right to hold the cotton, until the indebtedness should

[Jones v. Chaffin.]

be paid. If by agreement all around, express or implied, the owner became debtor for the charges, a similar lien on the cotton attached to that relation. Let us take a practical view, then, of the manner in which the warehousemen conducted their business, and get at the true intent and meaning of the alleged custom. It is too clear for controversy that there was no intention on the part of the warehousemen, in the practice they pursued, to waive, suspend, alter or impair, in any way whatever, or at any time, the lien which the law gave them—the right to hold the cotton until their charges were paid; and this being so, there was no intention, at any time, to waive, suspend or otherwise impair the debt, for without a debt there could be no lien. The lien, so long as retained, is inseparable from the debt. The transfer of the one carries the other with it, at least in equity. Now, the defendant's proposition is that the warehousemen, by pursuing the practice of relying upon their lien, and forbearing to enforce collection of the debt, independently of the lien, so long as the customer's patronage was being continued, showed an intention to impose upon the debt a condition that it should never be collectible, independently of the enforcement of the lien, and that the lien should never be enforced so long as the owner might see fit to permit the cotton to remain in the warehouse. In other words, that the intention of the warehousemen was, that they should have no enforceable debt, except by virtue of the lien, and that the time when they might enforce the lien should be left purely at the will and pleasure of the owner. If the owner did not see fit to order the cotton out for years, the warehouseman must be taken as consenting to keep it for him, without right to demand pay for the storage. No such conclusion as this can be practically drawn from the practice in question. The practice pursued was merely a rule of convenience. It is common knowledge that, in most instances, cotton is stored only a short time in the cotton season, so that the forbearance of the charges until the relation terminated and all charges had severally accrued, did not become onerous to the warehousemen; and the lien given by law usually afforded them ample security. It was a convenience to merchants and brokers, dealing in cotton, and the producer, for by that system they could more conveniently visit upon the

producer the expense of marketing his product, by regulating the price with reference to the lien for warehouse charges which had to be removed before the cotton could be reduced to possession. It relieved them of the inconvenience of going to the warehouseman and paying the charges every time a sale of the cotton took place. But by this plan of operation, no practical man would suppose the warehouseman intended to waive and destroy his debt, as an enforceable obligation, if it should so turn out, for any cause, that the security the law gave him, to-wit, the lien, had failed. As well might it be said, that a mortgagee, who had shown by his conduct, in the most positive and emphatic manner, a purpose to rely upon his mortgage security, and had, for the convenience or ease of the debtor, forborne collection of his debt because he was satisfied with the security, had thereby forfeited his right to collect his debt, if the mortgaged property had become destroyed. The common sense view of the matter, as we conceive, is that the relation of creditor and debtor between plaintiff and A. B. was created when the latter employed the former to store the cotton; that a debt of 50 cents per bale, immediately demandable of A. B., arose and continued, at least until he sold to defendant. It is unnecessary to decide whether, under the custom, his liability then ceased and that of the defendant began. Whether so or not, the defendant became liable, at the option of the plaintiff, by reason of his assumption of the debt. It is a familiar rule in this State that a promise made by one to another for the benefit of a third person may be enforced by such third person. Besides, under the facts of this case, the defendant has money which *ex equo et bono* belongs to the plaintiff. A. B., in legal effect, paid him the money for plaintiff's use, when he sold him the cotton at a price reduced by the amount of the warehouse charges which it was known defendant would have to pay before he could get the cotton.

Under any aspect of the case, plaintiff was entitled to recover; and if the trial court committed errors they were without prejudice to the defendant.

Affirmed.