CITY OF NORMAN *et al.* v. ALLEN *et al.*

No. 6219.    Opinion Filed March 30, 1915.

(147 Pac. 1002.)

1. MUNICIPAL CORPORATIONS—Assessments for Improvements —Objections by Property Owners—Time for Making. Where a city of the first class in the manner provided by law lets a contract for street paving and other improvements and, after ascertaining the cost thereof, appoints a board of appraisers to appraise and apportion such cost to the lots and lands in such improvement district, and the city council causes notice to be published of the holding of a session to consider the appraisers' report and to hear objections thereto on the part of property owners, who file no objection to the appraisers' report, they will, after the work has been completed and accepted by the city, be precluded from interposing objections that the appraisers' report and apportionment is excessive, where such property owners knew, or were in position to have known, of such alleged defective work or apportionment before the confirmation of the appraisers' report.

2. SAME—Assessing Ordinance—Validity—New Ordinance. Where city improvements have been contracted for, and the report of the board of appraisers apportioning the benefits thereof to the lots and land in the improvement district has been confirmed by the city council, and on the date of such confirmation the city council attempts, by ordinance, to make and levy assessments against property and property owners in said improvement district, according to the apportionment made by the appraisers, and such assessing ordinance is thereafter held by a court of competent jurisdiction to be void, **held** the city council may, thereafter, at any time, under section 644, Rev. Laws 1910, pass a new assessing ordinance, based upon the report of the board of ap-

praisers theretofore confirmed, and such new ordinance will have the same force and effect of an original assessing ordinance.

3.  **SAME—Interest on Assessments.** Where such new assessing ordinance is passed after the work contracted for has been completed and accepted by the city, the assessments therein levied may be declared payable on the 1st day of September next after the acceptance of such work, but the ordinance shall provide that the property owners may, within 30 days from the passage thereof, have the privilege of paying all assessments without interest, and if such property owners do not avail themselves of such privilege, their assessments and installments thereof shall draw interest from the date of the passage of the assessing ordinance, and the interest on the whole or entire unpaid installments and assessments then be payable annually at the time the respective installments under the assessments are payable, but the council has no authority to provide in the new assessing ordinance that interest shall be paid on any installment or assessment from a date preceding final passage of such ordinance.

4.  **SAME.** Where the board of appraisers' report was confirmed and the work and improvement contracted for by the city accepted September 27, 1910, but no valid ordinance was passed for several years thereafter levying assessments for the payment of the cost of such work and improvement apportioned to the respective lots and property owners on the improved district, the city council cannot, in such late ordinance, require property owners to pay interest on the installments therein levied from the date of the approval of the appraisers' report, or from any date prior to the passage of the ordinance.

5.  **INJUNCTION — Improvements — Assessment Ordinance.** Where an ordinance, passed by a city of the first class, levies assessments on property situated in such city for the cost of improvements, street paving, etc., therein, and where the work has been previously accepted, such assessment constitutes a valid lien upon the property, subject to such payment from and after 30 days from the date of the assessment or the passage of the assessing ordinance, and if said ordinance wrongfully requires property owners to pay interest thereon for several years prior to the passage of the assessing ordinance, an injunction will lie before the final passage of the ordinance to enjoin such passage. Also, where it is obvious or probable that the ordinance if finally passed would result in a multiplicity of suits on the part of property owners to avoid the payment of such interest, and to secure their right to pay all assessments against their property within 30 days from the passage of the assessment ordinance, without interest, the passage of the ordinance will be enjoined.

(Syllabus by the Court)

*Error from District Court, Cleveland County;*
*R. McMillan, Judge.*

Action by John S. Allen and others against the City of Norman and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

*Ralph C. Hardie,* for plaintiffs in error.

*J. B. Dudley* and *W. L. Eagleton,* for defendants in error.

BROWN, J. In December, 1909, the city of Norman by its mayor and council passed a preliminary resolution declaring it necessary to grade, pave, macadamize, and otherwise improve certain streets and alleys therein designated as Street Improvement District No. 3. Necessary plans, maps, and profiles were prepared by the city engineer and filed in the office of the city clerk, who was directed to advertise for bids for the work and material necessary for the contemplated improvements. Advertisement was duly made, and F. P. McCormick was awarded a contract to furnish the materials and do the work necessary for the completion of the improvements, and a written contract was entered into by and between the contractor and the city council, wherein it was agreed that the city should issue sufficient street improvement bonds to cover the cost of the improvements and deliver the bonds to the contractor in payment for the improvements. Having ascertained what the cost of the improvements would be, the city council thereupon appointed appraisers to appraise and apportion this sum to the different lots situated in Street Improvement District No. 3 in proportion to the benefit to each lot as the result of such public improvement. The appraisers filed their report with the city clerk August 20, 1910, showing the sum apportioned by them to each lot or parcel of land in said improvement district. Thereafter the council caused notice to be given, and duly published, that on September 16, 1910, a session of the council would be held for the purpose of considering the appraisers' report and to hear objections and complaints from property owners relative

thereto. On September 16, 1910, the mayor and council met in pursuance of the published notice, but adjourned over until September 27th, the regular term for the meeting of the council, without having on the 16th of September considered the appraisers' report or hearing any objections or complaints concerning the same. At the regular meeting of the council September 27th, the report of the appraisers was considered and approved. At this meeting September 27th, there were present the mayor and only seven councilmen elect, the other councilman having resigned and his successor, though appointed, not having qualified, and the appraisers' report was then accepted and approved by a vote of four in favor and three against its acceptance and approval; and then and there the council, by a vote of four and three against, adopted Ordinance No. 148, wherein the lots belonging to the plaintiffs and other property in the street improvement district were charged and assessed the amounts apportioned thereto by the board of appraisers as shown by their report. Upon the petition of a number of plaintiffs, joined by other property owners in Street Improvement District No. 3, the district court of Cleveland county perpetually enjoined A. S. Clement, as the city clerk of the city of Norman, from certifying to the county treasurer the special assessment purporting to be levied by said Ordinance No. 148 on lots in Improvement District No. 3, and enjoined the county treasurer from entering or spreading said assessments on the tax rolls of Cleveland county, on the ground that said Assessment Ordinance No. 148 was not passed by the number of aye voters required by statute to give it validity, and was therefore void. No appeal was taken from said judgment, but later, July 13, 1913, F. P. McCormick, the contractor, appeared before the mayor and city council and requested them, as city council of said city, to pass what was termed a reassessment ordinance, substantially as follows:

"Ordinance No. 217.

"An ordinance to reassess the cost of street improvements in street improvement district No. 3. in the city of Norman, Oklahoma, embracing the following described streets and alleys: * * *

"*Be it ordained by the mayor and councilmen of the city of Norman, Oklahoma:*

"Section 1.    That whereas, the board of appraisers heretofore appointed by resolution to appraise and apportion the benefits resulting from the paving and otherwise improving portions of streets, avenues and other public places described in the title of this ordinance, to the several lots and tracts of land which are liable to assessment to pay the cost of such improvements, which cost has been ascertained to be the sum of sixty-four thousand nineteen and 19/100 ($64,019.19) dollars, which amount is exclusive of the cost of improving the street intersections and alley crossings, have performed their duties according to law, as such appraisers, and have returned and filed with the city clerk a written report of their said appraisement and apportionment; and whereas, after the filing of said report, the mayor and councilmen did appoint a time for holding a session to hear and consider any complaints or objections concerning such appraisement and apportionment, and caused due notice of such session to be published according to law, and in pursuance of such action and publication, such session was duly convened and held by the mayor and councilmen on the 16th day of September, 1910; and whereas, upon the 16th day of September, 1910, the said city council adjourned to meet at their regular term of meeting upon the 27th day of September, 1910, and did at said adjourned session hear and consider all complaints and objections to said appraisement and apportionment, and did then and there review the same and did by resolution confirm said appraisement and apportionment as so reviewed; and whereas, upon the 27th day of September, 1910, the mayor and city councilmen of the city of Norman attempted to levy and assess by Ordinance No. 148 the various assessments against the various lots, pieces and parcels of ground in accordance with the report of the board of appraisers as previously apportioned and confirmed by the city council, which respective amounts so attempted to be levied and

assessed are set out in said ordinance number 148, which ordinance was duly published on the 29th day of September, 1910, as required by law; and whereas, afterwards, to wit, upon the 9th day of November, 1910, the mayor and city councilmen of the city duly and legally passed a resolution authorizing and providing that street improvement bonds should be issued for the aggregate amount of such assessment remaining unpaid, which amount was then and there found to be the sum of sixty thousand seven hundred and ninety-two and 81/100 dollars ($60,792.81), which bonds consisted of ninety bonds numbered from one to ninety, inclusive, bearing date of October 14, 1910, payable one-tenth thereof with interest on the entire amount on September 15, 1911, and one-tenth thereof yearly, with yearly interest upon the whole amount remaining unpaid on the 15th day of September, each succeeding year thereafter until all are paid, which bonds bear interest at the rate of 6 per cent. per annum from date until maturity, and 10 per cent. per annum after maturity, and the amount of said bonds and due date of same being as follows:   Four bonds for $1,000.00 each, four bonds for $500.00 each, and one bond for $79.28, due on September 15, 1911; four bonds for $1,000.00 each, four bonds for $500.00 each, and one bond for $79.28, due on September 15, 1912; four bonds for $1,000.00 each, four bonds for $500.00 each, and one bond for $79.28, due on the 1st of Sepetmber, 1913; four bonds for $1,000.00 each, four bonds for $500.00 each, and one bond for $79.28, due on September 15, 1914; four bonds for $1,000.00 each, four bonds for $500.00 each, one bond for $79.28, due on September 15, 1915; four bonds for $1,000.00 each, four bonds for $500.00 each, one bond for $79.28, due September 15, 1916; four bonds for $1,000.00 each, four bonds for $500.00 each, and one bond for $79.28, due September 15, 1917; four bonds for $1,000.00 each, four bonds for $500.00 each, one bond for $79.28, due on September 15, 1918; four bonds for $1,000.00 each, four bonds for $500.00 each, one bond for $79.28, due on September 15, 1919; four bonds for $1.000.00 each, four bonds for $500.00 each, one bond for $79.28, due on September 15, 1920; and whereas, in accordance with said resolution the said bonds authorized to be issued thereunder were regularly executed and issued in proper form by the mayor and city clerk of the city of Norman, and were delivered to F. P. McCormick, the contractor, and the

person entitled thereto; and whereas, Ordinance No. 148 aforesaid, in which the mayor and city council attempted to levy and assess the apportionment for the improvements against the various lots and parcels of land as so apportioned and appraised by the board of appraisers, was not passed by a majorty of the councilmen-elect, but only received four votes in the affirmative and three in the negative, there being eight councilmen-elect; and whereas, the mayor erroneously declared said ordinance passed by said vote, although in fact it required five votes in the affirmative to pass the same; and whereas, after said bonds issued under said resolution under date of November 9, 1910, had been issued and delivered, suit was filed on September 14, 1911, in the district court of Cleveland county, by various property owners, under the style of *Allen et al. v. Clement et al.*, attacking the validity of said Ordinance No. 148, on account of the same not being passed by a majority of the councilmen-elect of said city of Norman; and whereas, the mayor and city councilmen are obligated and bound and are required by law to pass a valid ordinance levying assessments upon the various lots· and tracts of land in accordance with the report of the board of appraisers as approved and apportioned by said city council, upon the 27th day of September, 1910; and whereas, said ordinance is irregular, defective and invalid, and whereas, it is provided in section 728 of the Compiled Laws of Oklahoma (1909) that: 'In the event that any special assessment shall be found to be invalid or insufficient in whole or in part for any reason whatsoever, the city council may, at any time, in the manner provided for levying an original assessment, proceed to cause a new assessment to be made and levied, which shall have like force and effect as an original assessment;' and whereas, it is the duty of the city council of the city of Norman to pass and enact a reassessing ordinance which shall have like force and effect as an original ordinance: Now, therefore, in consideration of the premises, be it ordained by the mayor and councilmen of the city of Norman, Oklahoma:

"Section 1. That there shall be and is hereby levied and assessed against the several lots and tracts of land in Street Improvement District No. 3, with improvements thereon and appurtenances thereunto belonging the amounts

respectively stated in the said report of the board of appraisers. [Here follows description of lots and amount of assessment to each lot.]

"Sec. 2. That the assessment hereby levied against the above described lots and tracts of land shall bear interest from the 27th day of September, 1910, at the rate of seven per cent. (7%) per annum, being the date of the original assessing ordinance, and said assessment shall be payable in ten equal installments. That the first of said installments, with interest from the 27th day of September, 1910, on the whole assessment levied in this ordinance was due and payable on the 1st day of September, 1911, and the second of said installments, with interest from the 27th day of September, 1910, on the whole assessment levied with this ordinance, was due and payable on the 1st day of September, 1912: Now, therefore, the first and second installments of one-tenth of the whole amount of this assessment respectively are now declared to be due and payable, together with interest on the whole assessment levied in this ordinance from the 27th day of September, 1910, at the rate of 7 per cent. per annum. The third of said installments, with interest upon the whole amount remaining unpaid at the rate of 7 per cent. per annum shall be due and payable on the 1st day of September, 1913. The fourth of said installments, together with interest thereon at the rate of 7 per cent. per annum upon the whole amount remaining unpaid shall be due and payable on the 1st day of September, 1914; and one of said installments with interest on the whole amount remaining unpaid at the date due, shall be payable on the 1st day of September of each of the years 1915, 1916, 1917, 1918, 1919, and 1920, respectively. Provided, however, that any payment or payments which may have been heretofore made by any lot owner or lot owners on the assessment made on said lots respectively to the proper officer or officers as provided by law on said improvements, such payments to be credited on the amount of the assessment and interest charged or chargeable against such lot or lots, respectively.

"Sec. 3. This ordinance shall take effect and be in full force from and after its passage, approval and publication, according to law.

"Passed and approved this —— day of ———, 1913.
"———————,
"By————, *Mayor.*
"Attested:
"————, *City Clerk.*"

The purported reassessment Ordinance No. 217 had been passed by the city council to its second reading, and it was proceeding to pass same to its final passage when on the 9th day of August, 1913, defendants in error filed this suit in the district court of Cleveland county against the city of Norman, its mayor and councilmen and their successors in office, and F. P. McCormick, contractor, to enjoin the passage of said Reassessment Ordinance No. 217 on certain grounds hereinbefore set out. A temporary injunction was issued by the trial court restraining the city council from further proceeding with the passage of said Reassessment Ordinance No. 217, and on the 13th day of September, 1913, when the case was called for trial, the defendants below moved to dissolve the temporary injunction substantially on the ground that the petition did not state a cause of action. This motion was refused, and defendants demurred to the petition on the same ground, and the demurrer was overruled. The defendants excepted to the action of the court in overruling their motion and demurrer, and elected to stand on the demurrer, and judgment was rendered perpetually enjoining the city of Norman, its mayor and councilmen, and their successors in office, from finally passing said Ordinance 217. To reverse this judgment defendants below bring the case here on two assignments of error, viz: (1) That the district court of Cleveland county erred in overruling the motion of defendants below to dissolve the temporary injunction granted on the petition of the plaintiffs below; (2) that said court erred in overruling the demurrer of defendants below to plaintiffs' petition.

The only substantial ground relied on in defendants' motion to dissolve and in their demurrer in the trial court was that plaintiffs' petition did not state a cause of action.

Both assignments may be considered together, and are so treated in plaintiffs in error's briefs.

Are the facts stated in the petition sufficient to entitle plaintiffs to the injunction finally perpetuated by the trial court?

The grounds of complaint set out in the petition are numbered by us for convenience, and are substantially as follows: (1) That the sum apportioned by the appraisers to be charged and assessed against plaintiffs' lots and lands in Street Improvement District No. 3, as shown by the appraisers' report, is excessive. (2) That said apportionment is illegal and void. (3) That plaintiffs have not had an opportunity to object to the appraisers' apportionment and report. (4) That the consideration, approval, and confirmation by the mayor and council of said apportionment and report on September 27, 1910, was unauthorized by law and void. (5) That there never has been any legal or valid apportionment of costs of the city improvements contracted for, to plaintiffs' lots, etc., in said District No. 3. (6) That F. P. McCormick, contractor, breached his contract with the city, and that the improvements made by him were of less value and of less benefit to plaintiffs' lots, etc., in said district than they would have been had said contractor complied with his contract for such improvements. (7) That the proposed Ordinance No. 217 is not authorized by and is contrary to the statutes of Oklahoma. (8) That said Ordinance No. 217, if finally passed, will, according to its terms, exact of plaintiffs payment of unjust and inequitable sums of money and will cast a cloud upon their lots in said District No. 3. (9) That the defendants below are threatening to pass, and will finally pass, said ordinance unless enjoined

from so doing, and that plaintiffs will suffer irreparable injury without any adequate remedy at law.

The demurrer of the defendants below to the petition of plaintiffs had the effect, for the purpose of our consideraion, of an admission as true of every material and properly pleaded allegation therein.

The authority for cities and municipalities to make public improvements and charge the cost thereof against lots and lands therein which are benefited by such improvements is found in Revised Laws 1910, as follows:

Section 608 authorizes the mayor and city council to cause such improvements to be made.

Section 615 provides for the specifications and estimates by the city engineer of the improvements to be made, subject to the approval thereof by the mayor and council.

Section 616 authorizes the mayor and city council to contract for the improvements and to levy assessments to pay therefor.

Section 619 provides that lots and lands benefited by such improvements shall be charged with the cost thereof.

Section 620 authorizes the mayor and city council to enact ordinances and make rules and regulations necessary to require owners of property to pay the cost of the improvement.

Section 621 provides for the manner of ascertaining and designating property chargeable with the cost of improvement.

Sections 622 to 625, inclusive, pertain to the manner of ascertaining costs of improvements and the letting of contracts therefor.

Section 626 provides that, "as soon as the contract is let, and the cost of such improvement * * * is ascertained," a board of appraisers shall be appointed to appraise and apportion to the lots and lands in the improved district the cost thereof.

Section 627 requires the board of appraisers to appraise and apportion to, the lots and lands in the improvement district the cost of such improvements, and to file written report thereof with the city clerk.

Section 628 provides that when the appraisers' report has been made and filed, the mayor and council shall designate a time for holding a session to hear complaints or objections by property owners to the appraisement or apportionment by the appraisers as to any of the lots or lands affected thereby; and to publish notice that such session of the council will be held, and the time fixed therefor.

Section 629 provides the council shall, at the published session, examine, correct and confirm the appraisers' report.

The foregoing statutes have been referred to for the purpose of showing the procedure and requirements preliminary to the levy of assessments, and the several acts therein mentioned are, in contemplation of the statute, to be done as soon as practicable after letting the contract for city improvements and ascertaining the cost thereof.

Although in the petition of the plaintiffs below they attacked the apportionment by the appraisers as being excessive and allege they had no opportunity to object thereto, they do not here seriously question the legality of any of the proceedings of the city up to and including the confirmation of the apportionment and report of the board of appraisers, as will appear from the following statement on

page 9 of their brief in this case, referring to said objections as follows:

"While not waiving that objection—and if good we do not believe it could be waived—we do not care to urge it on this appeal, unless the mere suggestion will be sufficient for the appellate court to hold with us on the proposition."

We do not think there is any merit in the proposition referred to.

The specific grounds relied on by plaintiffs below for the injunction sought and obtained are stated on page 24 of their brief:

"Without intending to be tiresome, but with the idea of being so explicit that our position cannot be misunderstood, we repeat: (1) That this is not an action to adjudicate the rights between the property owners in Improvement District No. 3, in Norman, and F. P. McCormick, who contracted to make these improvements with the city of Norman. (2) But, instead, this action is to prevent the city council from passing what they term a 'reassessing ordinance,' in 1913 as of the year 1910, thus depriving the property owners in Improvement District No. 3: (a) Of their right to bring suit within 60 days from the passage of the assessing ordinance under section 644; (b) requiring the property owners to extend their payment through a period of ten years, with interest where they should have been given the right to pay the same in cash without interest; (c) forcing the payment of at least one installment and possibly two at least one year before the assessing ordinance was passed; and (d) the forcing of the property owners to pay interest on the cost of the improvements assessed against their respective properties when under the statute none is due; it being our contention that the 60-day limitation in which to bring suit does not commence to run until the passage of the assessing ordinance, and therefore any assessing ordinance passed should be of this date, and not the date of the assessing ordinance which was declared void by the court.

"We further contend that under our statute no interest can be asesssed or collected against the cost of these improvements until after the assessing ordinance is passed.

"We further contend that the property owners must be given the right to pay their entire assessment in cash without interest, and, lastly, that no assessment can become due until the September following the passage of the assessing ordinance, and not then if said assessing ordinance is passed after August 1st of said year."

We shall, therefore, confine our consideration to the questions and propositions contained in the seventh, eighth, and ninth grounds relied on by plaintiffs below to justify and sustain the judgment of the trial court.

It is contended by counsel for plaintiffs in error that the proposed new assessing Ordinance No. 217 substantially complies with the law which, in the instant case, authorizes the city of Norman to adopt an ordinance levying assessments against real property in Street Improvement District No. 3 to pay for paving, etc., of the streets therein. The defendants in error, on the other hand, contend that the terms and provisions of this proposed ordinance are contrary to the statutes of Oklahoma.

The question thus presented is, What is the existing law with reference to new assessing ordinances looking to collection of costs of public improvements, which in this case appear to have been approved and accepted by the city September 27, 1910? In section 631 it is provided that:

"Immediately after the approval of the city council of any portion of the work herein provided for, the clerk shall mail to each property owner whose property is liable for the work so completed and approved * * * the amount of the assessment against such property, and notifying said property owner that said assessment may be paid within thirty days from the date of the approval of the work as aforesaid, together with interest thereon at the rate of seven per cent. per annum from the *date* of said *assessing ordinance*, not exceeding a period of four months."

City of Norman et al. v. Allen et al.

Section 632 provides:

"The first installment of said assessment together with interest to that date upon the whole assessment, *from the date of the assessing ordinance,* shall be due and payable on the first day of September next succeeding the completion of said work, or any part thereof not less than one block, and one installment, with the yearly interest on the amount remaining unpaid, shall be payablbe on the first day of September in each succeeding year until all shall be paid. In case any installment of interest is not paid when due, the installment so matured and unpaid, and the unpaid interest thereon, shall draw interest at the rate of eighteen per cent. per annum from maturity until paid. If said work, or any part thereof, not less than one block, shall not be completed and approved until after the first day of August in any year, the first installment of such assessment and interest, as aforesaid, shall be due and payable on the first day of September of the following year."

Section 633 provides:

"The ordinance *shall provide that the owners of the property so assessed shall have the privilege of paying the amounts of their respective assessments, without interest, within thirty days from the date of the passage of such ordinance.* The owners of property upon which said work, or any part thereof, not less than one block, shall at any time have been completed and approved, shall have the right to make payment of their respective assessments within thirty days from the approval of said work, or part thereof, with interest upon said assessment at the rate of seven per cent. per annum *from the date of said assessing ordinance* to the date of payment: Provided, that if the work for which the property owner proposes to pay his entire assessment, and interest, as herein provided, has not been completed and approved within four months from the date of said assessing ordinance, then four months' interest only shall be added to said assessment, and the remaining interest credited upon the record of said assessment by an entry, 'Canceled by lapse of time,' with a statement of the amount of interest so canceled."

Section 635 provides:

"The mayor and council, after the expiration of the said period of thirty days after the passage of the assess-

ing ordinance, *within which period the whole of any of said assessments may be paid without interest,* shall provide by resolution for the issuance of negotiable coupon bonds in the aggregate amount of such assessments then remaining unpaid, with interest and costs, bearing date fifteen days after the passage of the ordinance levying the assessments.  *   *   *"

Section 644 provides:

"*   *   *   Provided, that in the event that any special assessment shall be found to be invalid or insufficient in whole or in part, for any reason whatsoever, the city council may, at any time, in the manner provided for levying an original assessment, proceed to cause a new assessment to be made and levied, which shall have like force and effect as an original assessment."

Under the statutes above referred to, we conclude that the law relating to the new assessing ordinance in question is as follows:   The mayor and council of the city of Norman have authority, and it was and is their duty in the manner provided by law to pass a new assessing ordinance levying assessments against the respective lots and parcels of land in Street Improvement District No. 3 for the sums appropriated to such lots, etc., as shown by the confirmed report of the board of appraisers.   That the sum or sums assessed against each lot or parcel of land shall be stated and shown in said ordinance.   That said assessments and amounts thereof shall be divided and made payable in ten equal installments, as follows:

"The first installment payable September 1st, 1911, the second installment payable September 1st, 1912; and so on until all installments are paid.

"The ordinance shall provide for the owners of the property so assessed shall have the privilege of paying the amounts of their respective assessments, without interest, within thirty days from the date of the passage of such ordinance."

It may be provided in said ordinance that all assessments and installments not paid within 30 days from the

passage thereof shall bear interest at the rate of 7 per cent. per annum from the date of the ordinance, payable annually, September 1st.    The ordinance may further provide that:

"In case any installment and interest is not paid when due, the installment so matured and unpaid, and the unpaid interest thereon, shall draw interest at the rate of 18 per cent. per annum from maturity until paid."

But no authority is found in the statute for a provision in said ordinance requiring the payment of interest on any assessment from any date prior to the passage of said ordinance, while section 633, *supra,* requires that said ordinance *shall* provide that property owners *shall* have the privilege of paying assessments without interest, etc. We therefore conclude that the proposed new assessment Ordinance No. 217 does not comply with the statute, and therefore is unauthorized, for the reason that it does not provide that property owners in Street Improvement District No. 3 shall have the privilege of paying assessments against their property without interest, within 30 days from the passage thereof, and for the further reason that by the terms of said proposed ordinance property owners will be required to pay interest at the rate of 7 per cent. per annum from September 27, 1910, on all assessments against their property in said improvement district.

Counsel for plaintiffs in error further contends that a suit, such as plaintiffs' below, cannot be maintained to enjoin a city council from passing an ordinance concerning a subject-matter within its jurisdiction, and authorities are cited which amply support this contention as the general rule, though there are well-recognized exceptions to the rule stated.    The authorities cited by plaintiffs in error in support of this contention of noninterference by courts of equity in the passage of city ordinances apply the rule only to ordinances involving legislative discretion.    2 Mc-

Quillin on Municipal Corporations (cited by plaintiffs in error) section 705, as to ordinances which will not ordinarily be enjoined, reads as follows:

"Ordinarily the passage of an ordinance is a legislative act which a court of equity will not enjoin."

The same author, on exceptions to the rule stated, says (section 705, p. 1534):

"The exception to the rule would seem to be limited to cases where the governing body of the municipality has no power to act on the particular subject legislatively at all, or where the threatened act is not legislative, but purely ministerial, or where such body is clothed with certain powers, but threatens to go beyond or outside of such powers, and thereby invade the property or property rights of complainant."

In 22 Cyc. at page 890, referring to ordinances the passage of which, as a general rule, will not be enjoined, it is said:

"The general rule is that a municipal corporation, in the exercise of a *legislative power* in relation to the subjects committed to its jurisdiction, can no more be enjoined than can the Legislature of the state."

And further, referring to exceptions to the rule just stated, the same author says (same page):

"There are exceptions, however, to this doctrine of noninterference, as where the mere passage of the ordinance would immediately occasion, or would be followed by, some irreparable loss or injury beyond the power of redress by subsequent judicial proceedings, or where it would cause a multiplicity of suits."

An assessing ordinance, however, does not involve discretion; it is one which the city council is required by statute to pass for the purpose of raising funds to pay for improvements done or contracted for, and is remedial and mandatory.

In the case of *City of El Reno et al. v. Cleveland-Trini-dad Paving Co.*, 25 Okla. 648, at page 660, 107 Pac. 163, at page 167 (27 L. R. A. [N. S.] 650), the present Chief Justice, in discussing the subject of remedial statutes, says:

"It being settled that all the proceedings of the city authorities up to the time of letting said contract were regular, after the letting of the contract no discretion of any kind is vested in the city or its municipal council. Whether its action in declaring a necessity to pave, etc., or in ascertaining that no sufficient protests had been made, and determining to proceed with the improvement, is legislative or administrative does not concern us in this connection. After the contract has been let the statute is mandatory in its terms that the council shall appoint appraisers; shall levy an assessment; shall provide for the issuance of bonds; that the mayor and clerk shall sign and attest the bonds; that the clerk shall publish notice of the time when the first assessment becomes due and payable, and shall certify to the county treasurer such assessments as are not paid within the time specified. All of these duties are ministerial, and the council, mayor, or clerk are left without any discretion as to whether they shall or shall not perform them."

We, therefore, conclude that proposed Ordinance No. 217 is not within the class of ordinances which courts of equity may not enjoin, and that the contention of plaintiffs in error to that effect is without merit.

The next and final question for our consideration is whether proposed Ordinance No. 217, if finally passed by the city of Norman, with its present terms and requirements, will result in irreparable injury to defendants in error as property owners in Street Improvement District No. 3 in said city, or would the passage of said ordinance likely result in a multiplicity of suits by or between the city and property owners therein? If it would have this effect, then the judgment of the court below enjoining the passage thereof should stand.

It is contended by plaintiffs below, defendants in error, that the passage of Ordinance 217, with the recitals contained therein, would have the effect to preclude them from bringing the suit authorized by section 644, Rev. Laws 1910, to set aside the assessments made by this ordinance, or to contest the validity thereof, since by the terms of the ordinance the assessment installments and interest are declared to be due and payable more than three years before, while their right to bring said suit is limited by said section to 60 days. But we do not agree with this contention. Section 644, *supra,* provides that such suit may be brought within 60 days after the passage of the ordinance making such final assessment. As yet no ordinance has been passed, and the property owners would have the right, under this statute, to bring the suit therein authorized within 60 days from the taking effect of Ordinance No. 217.

It is further claimed by the defendants in error that the passage of the supposed ordinance will cast a cloud upon the title to their lots, etc., in Improvement District No. 3, and we cannot say this contention is without merit. If this ordinance is passed, it will become a matter of public record from which it will appear that plaintiffs, who are alleged and admitted to be property owners in Street Improvement District No. 3 in the city of Norman, are indebted in the aggregate principal sum of $60,792.81, and that the same, with interest at the rate of 7 per cent. per annum from the 27th day of September, 1910, is a lien upon their property in said district and is unpaid, and will not wholly mature until September, 1920.

The case of *City of El Reno v. Paving Co., supra,* was one in which the city council had adopted an ordinance repealing an assessment ordinance, and were proceeding and threatening to put the repealing ordinance into effect by publishing it as required by law. It appears the trial

court by injunction restrained the final publication putting the repealing ordinance into effect, on the ground that to repeal the assessing ordinance would cast a cloud upon the city's bonds issued to pay for paving improvements, etc., and this court affirmed the judgment below.  This court on pages 660 and 661 of 25 Okla., page 167 of 107 Pac., says:

"These assessments are the basis upon which rest the bonds issued in payment to the contractor.  To destroy that assessing ordinance is to destroy the property of the contractor.  To cast a cloud upon the assessing ordinance by an attempt to repeal is to create a cloud upon the title to his property, which will result in irreparable loss, and which can be removed only by a suit in equity.  *The action of the council in attempting to repeal the assessing ordinance was not a legislative act taken by a legislative body in the exercise of a legislative discretion.*  It was an act with reference to a purely ministerial matter, and one clearly in excess of its powers.  It was an act outside of the powers of the municipal council which invades the property rights of the contractor.  That a law of a state depriving one of his property without due process of law, or impairing the obligation of one's contract, may be annulled and the execution thereof enjoined is a rule established by the Supreme Court of the United States as early as the case of *Marbury v. Madison,* 1 Cranch, 137, 2 L. Ed. 60.  That a municipal ordinance passed in the exercise of its delegated power is a law of the state, and, if the same has the effect of depriving one of his property without due process of law or impairing the obligation of one's contract, the same may be annulled and the enforcement thereof enjoined, seems to be also well settled."

The principles involved in the El Reno Case and the instant case are quite similar.  In the former a cloud would be cast on the city's bonds held by the contractor by a repeal of the assessing ordinance, while in this case the final passage of the proposed Ordinance No. 217, by the terms of which property owners in Improvement District No. 3, instead of being allowed to pay all assessments without inter-

est, as provided by statute, will be required to pay interest at the rate of 7 per cent. per annum from September 27, 1910, on all assessments, and the public records will show a lien on said property to 1920 to secure both the assessments and interest. It may be contended that property owners might force the city council to accept the payment of all assessments without interest within 30 days after the passage of Ordinance No. 217. This is true, but to do so would evidently necessitate numerous suits against the city, since the provisions in the ordinance that interest shall be paid from September 27, 1910, justifies the assumption that such interest will be demanded. It might also be said that the contractor and bondholder in the El Reno Case would compel the city council to pass a new assessing ordinance in case of the repeal of the original one and, while the bonds are held by the contractor, only one suit in that case would be necessary, while in this case, no doubt, a great number of suits would be brought by property owners to defeat collection by the city of excessive interest, or to enforce their right to pay in cash. In section 4881, Rev. Laws 1910, it is said:

"An injunction may be granted to enjoin the enforcement of a void judgment, the illegal levy of any tax, charge or assessment, * * * or any proceeding to enforce the same; and any number of persons whose property is affected by a tax or assessment so levied may unite in the petition filed to obtain such injunction."

22 Cyc. at page 766, says:

"The prevention of a multiplicity of actions at law is one of the special grounds of equity jurisdiction, and for that purpose the remedy by injunction is freely used."

See, also, other authorities, *supra.*

The material facts we have referred to are properly in plaintiffs' petition, and, as we have before stated, were by defendants' demurrer admitted to be true; and, defendants having elected to stand on their demurrer upon the

overruling thereof by the trial court, the court properly entered judgment perpetually enjoining the city of Norman and its mayor and councilmen and their successors in office from proceeding further with the final passage of the ordinance. It may be contended that the city probably would have amended the ordinance before final passage so as not to exceed its authority, but the allegation in the petition is it is threatening to finally pass the ordinance unless enjoined by a court. This allegation is admitted by defendants' demurrer, and the truth thereof demonstrated by the prosecution of this appeal. Had it not been the intention of the city council to pass the ordinance complained of, then why go to the expense of this appeal?

We do not wish to be understood as holding a proper new assessing ordinance cannot be passed by the city council for the collection of the amount apportioned in the report of appraisers approved September 27, 1910. Under section 644, Rev. Laws 1910, such new ordinance may be passed at any time. What we do hold is that this Ordinance No. 217, with its present provisions, would be inequitable to property owners and violative of their statutory rights as to the time and manner of payment of assessments and interest.

We have carefully examined the record in this case, from which it does not appear that there has been a miscarriage of justice or the substantial violation of any constitutional or statutory right of defendants below.

The judgment is therefore affirmed.

All the Justices concur, except KANE, C. J., not participating.