# NITSCHE v. STATE SECURITY BANK OF ZANESVILLE, OHIO, et al.

No. 8311—Opinion Filed Jan. 8, 1918.

(170 Pac. 234.)

**Municipal Corporations — Street Improvements—Assessments—Tax Bills—Assignment—Foreclosure.**

A municipal corporation having adopted a charter form of government, as provided by law, may, under section 7, art. 10, of the Oklahoma Constitution and the provisions of its charter and ordinance enacted in pursuance thereof, levy and collect assessments for street improvements, and fix the amount thereof as a lien on abutting property in proportion to the accruing benefits regularly ascertained, and may issue and deliver to the contractor in payment of his claim for making such improvements written evidence of the amount thereof, designated "tax bills," the same may be made to bear interest at 7 per cent. per annum, and provide for the payment of a reasonable attorney's fee in case of legal proceedings to collect the same, and such certificate may be assigned and the lien which it evidences may be foreclosed by the assignee, and the property sold to satisfy the same.

(Syllabus by Galbraith, C.)

Error from District Court, Tulsa County; Conn Linn, Judge.

Action by the State Security Bank of Zanesville, Ohio, against Louis A. Nitsche and others. Judgment for plaintiff, and defendant Nitsche brings error. Affirmed.

John F. Kerrigan, for plaintiff in error.

Randolph, Haver & Shirk, for the State Security Bank.

Opinion by GALBRAITH, C. This action was instituted in the trial court by the State Security Bank of Zanesville, Ohio, as assignee of the Cleveland Trinidad Paving Company, on a written instrument designated "Special Tax Bill" with installment coupons attached thereto, as follows:

"Special Tax Bill.

"Street Improvement District No. 52—A.

"This certifies that the following described real estate situated in the corporate limits of the city of Tulsa, county of Tulsa, state of Oklahoma, to wit: Lot 3, block 3, according to Lindsey addition, said city—and the owner thereof, have been duly assessed and charged with the sum of four hundred fifty-seven dollars and fifty-four cents ($457.54), and interest from August 22, 1911, at the rate of 7 per cent. per annum until fully paid.

"This special tax bill is one of a series issued for the work of paving, curbing, guttering, draining, and doing the necessary grading in street improvement district 52-A in the city of Tulsa, state of Oklahoma, under contracts therefore between said city of Tulsa and the Cleveland Trinidad Paving Company, dated March 27, 1911, said work having been completed in accordance with the terms of said contract and to the satisfaction and acceptance of the city engineer and the board of commissioners of said city.

"Said sum has been duly levied, assessed, apportioned, and charged against said property benefited, property liable to assessment and the owner thereof by Ordinance No. 932, passed and approved August 22, 1922, as provided by law, and is a lien upon said property.

"This special tax bill is payable at the office of the commissioner of finance and revenue of the city of Tulsa in ten installments, the first installment due on the 15th day of February, 1912, for one-tenth of the principal amount, and interest on the entire principal amount from the 6th day of September, 1911, and for one-tenth of the principal amount and interest on the deferred installments on the 15th day of February, of each and every year thereafter up to and including the 15th day of February, 1921, as evidenced by coupons hereto attached. And this obligation and the lien aforesaid shall extend to and include rea-

sonable attorney's fees and other costs of collection of this special tax bill or any part thereof if default shall be made in the payment thereof. Default in the payment of any installment, or any part thereof, or the interest thereon, as provided herein, may, at the option of the holder hereof, mature all installments for all purposes without notice, and upon each default suit may be commenced at once to recover judgment for the entire principal accrued interest, attorney's fees, and costs, and for the sale of said property to satisfy the same, or said amounts may be enforced and collected as are other delinquent taxes, provided, however, that the owner of said property, his heirs, successors, or assigns, shall have the privilege of discharging the whole amount assessed against said property, or any installment thereof upon payment of the unpaid principal with accrued interest, to the proper officer of the city at any time before maturity.

"And it is hereby declared and certified that all acts, conditions, and things required to be done and to exist precedent to, and all prerequisites to, the fixing of the lien and claim evidenced hereby, the making of said improvements, the levying of said assessment, and the issuing of this series of special tax bills have been done and duly performed and do exist in regular and due form and manner as required by the charter of the city of Tulsa and the Constitution and laws of the state of Oklahoma.

"In witness whereof the city of Tulsa, Okla., by its mayor and board of commissioners, has caused this special tax bill to be signed by its mayor and attested by its city auditor and its corporate seal to be hereto affixed, and the installment coupons hereto attached to be signed by the lithographed signatures of its mayor and city auditor, and this tax bill to be dated the 6th day of September, 1911.

"[Seal] L. J. Martin, Mayor.

"Attest: E. B. Cline, City Auditor."

Attached to which were installment coupons numbered from 1 to 10, differing only in the due date, reading as follows:

"Installment Coupon.
"No. 1. $45.75. Special Tax Bill, No. 2260.

"On the 15th day of February, 1912, there will be due and payable to the bearer forty-five dollars and seventy-five cents, together with interest at the rate of 7 per cent, per annum from the 6th day of September, 1911, on the principal sum of special tax bill No. 2260, issued to the Cleveland Trinidad Paving Company for paving in street improvement district No. 52-A in the city of Tulsa, Okla.

"L. J. Martin, Mayor.
"Attest: E. B. Cline, City Auditor."

Indorsement on tax bill:
"Assignment.

"For value received this special tax bill and the lien thereof is hereby assigned to _____who will receipt for payment of same. •
"Dated_____
"The Cleveland Trinidad Paving Co.,
"By M. F. Bromley, Pres. & Treas.
"By F. H. Siegenthaler, Secy."

The petition alleged that the government of the city of Tulsa was that of a freeholders' charter form, regularly adopted; that the tax bill had been regularly issued for street improvements made; that the plaintiff was the owner and holder of said tax bill by assignment, and that default had been made in the payment of the installment coupons due, and by reason thereof it elected to mature all of said coupons as in the tax bill stipulated; and that the entire debt evidenced by said writing was matured, and due demand for payment thereof had been made, and no part thereof had been paid. The prayer was for judgment in the principal sum of $457.54, and interest thereon at the rate of 7 per cent, per annum from the 22d day of August, 1911, to the date of said judgment, and attorney's fees in the sum of $100, and for the costs of this action, and that the judgment be declared, established, and decreed a first lien, prior and superior to any and all other liens or claims in or to the following described real estate in the county of Tulsa, state of Oklahoma, to wit: Lot 3, block 4 of Lindsey addition to the city of Tulsa, Okla.; that said lien be foreclosed and said real estate sold to satisfy said lien as provided by law, and that the proceeds of said sale be applied: First, to the payment of the costs of this action; second, to the payment of the plaintiff of the amount of its judgment herein; and, third, that the residue, if any, be paid to the clerk of this court to be distributed as the court may direct. After a general demurrer to the petition had been overruled, the defendants answered in effect a general denial not verified. A reply was filed thereto. A demand for a jury trial was made by the defendant, which was overruled, and the cause was tried to the court and a judgment rendered for the amount of the principal sum, $457.54, and interest at 7 per cent. and $60 attorney's fee. To review that judgment this appeal has been perfected.

It is admitted that the tax bill in suit was authorized by the provisions of the charter of the city of Tulsa, and that it was regularly issued in the form and manner, and for the purposes in the charter prescribed,

and that authority for the charter provision was found in section 7 of article 10 of the state Constitution as follows:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation."

But it is contended that this provision was an authorization to the city only to levy and collect assessments for local improvements, and that it did not authorize the assignment of this right, or the delegation of it or any part thereof to any person or corporation, that this constitutional provision was a limitation of the power authorized, and that the assessment must not only be levied by the city, but must be collected by it also, and that the section of the charter authorizing the assignment of the tax bill, and the assignee to make collection thereof, is in conflict with the Constitution, and must fall, and the bank, therefore, had no right to maintain an action, and therefore the demurrer to the petition should have been sustained.

The only direct authority cited in support of this contention is McInerny v. Reed, 23 Iowa, 410. This case, however, is not a controlling authority for two reasons, at least: First, the ordinance in that case authorizing the sale of the property in the enforcement of the collection of the special assessment for city improvements was not authorized by the city charter, and in that case the court properly held that the assignee of the claim could not enforce the collection by the sale of the property; second, later cases in the same court do not follow this case. In Risden v. Shank, 37 Iowa, 82, under statutes enacted subsequently to the rendition of the decision in the Reed Case, the decision sustains the right of an individual in his own name to maintain an action against the owner of the property for the cost of special improvement assessments. And in Dewey v. City of Des Moines, rendered in April, 1897, reported in 101 Iowa, 416, 70 N. W. at 605, the same court not only sustained the right of the individual to enforce a lien for improvement assessments, but sustained the right to recover a personal judgment for the excess of the claim remaining unpaid after the property had been exhausted.

This court in Oklahoma City v. Shields, 22 Okla. 265, 100 Pac. 559, said:

"The fact that Const. § 7, art. 10 (Bunn's Ed. § 272), specifically authorizes county and municipal corporations 'to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation, is not such an exclusive grant (Const. § 36, art. 5 [Bunn's Ed. § 109]; Cooley's Const. Lim. [7th. Ed.] pp. 266) as to preclude the city from levying an annual tax therefor against all the taxable property of the city. * * *

"It is further insisted that the lien levied under the paving act, which is by the terms of the act to be discharged by 10 annual payments upon the property, is not an incumbrance; and section 7, art. 10, of the Constitution (Bunn's Ed. § 272), which provides that 'the Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation,' is cited in support of that contention. The fact that the assessment is made upon the property benefited does not indicate that the assessment, when properly made, does not become a debt, not only against the owner, but also against the property; for, in order that there may be a lien there must be a debt, a debt being prerequisite to the lien. Jones v. Chaffin, 102 Ala. 385, 15 South. 143.

"Now, there we have the improvements authorized and provision made for the payment therefor upon the abutting property benefited thereby, and the Legislature is authorized by said provision to make it effective, and in so doing it is declared that such assessment shall become a lien upon such property with the purpose of facilitating such improvement. For, if the assessment becomes a lien upon the property, the payment of the same is more secure, and parties can be more readily induced to make such improvements.

"Under the same power, specially conferred by section 7, art. 10, supra, for the purpose of preventing the making of improvements and the levying of the assessments from becoming a burden upon the abutting property owners, it is further provided that such assessments may be paid in 10 annual installments, and said act contemplates that such lien may not be entirely discharged until the expiration of 10 years."

The charter of the city of Tulsa contains the following provision in regard to the recitals in the tax bill:

"The recital in such certificates that the proceedings with reference to making such improvements have been regularly had in compliance with the terms hereof, and that all prerequisites to the fixing of the lien and claim evidenced by such certificate have been performed, shall be prima facie evidence of the facts so recited, and no other proof thereof shall be required, but in all courts the said proceedings and prerequisites shall, without further proof, be presumed to have been had or performed. Art. 9 par. 11."

. This court in the city of Collinsville, v. Ward et al., 64 Okla. 30, 165 Pac. 1145, in discussing the power of a municipal corporation to fix such lien and provide for the collection of the same, said in part:

"Section 539, Rev. Laws 1910, provides: 'When a charter for any city of this state shall have been framed, adopted and approved according to the provisions of this article, and any provisions of such charter shall be in conflict with any law or laws relating to cities in force at the time of the adoption and approval of such charter, the provisions of such charter shall prevail and be in full force, notwithstanding such conflict, and shall operate as a repeal or suspension of such state law or laws to the extent of such conflict; and such state law or laws shall not thereafter be operative in so far as they are in conflict with such charter. Providing, that such charter shall be consistent with and subject to the provisions of the Constitution, and not in conflict with the provisions of the Constitution and laws relating to the exercise of the initiative and referendum, and other general laws of the state not relative to cities of the first class.'

"The effect of a provision in a charter which has been duly framed, adopted, and approved by the Governor, where the same is in conflict with the laws of this state, has been considered in a number of cases, and the uniform holding has been that such charter provisions become the organic law of the municipality, and supersede the laws of the state in conflict therewith, in so far as such general laws attempt to regulate merely municipal matters. Owen v. Tulsa, 27 Okla. 264, 111 Pac. 320; Lackey v. State, supra [29 Okla. 255, 116 Pac. 913]; Mitchell v. Carter, 31 Okla. 592, 122 Pac. 691; Okla. Ry. Co. v. Powell, 33 Okla. 737, 127 Pac. 1080; In re Simmons, 4 Okla. Cr. 662, 112 Pac. 951; State v. Linn, supra [153 Pac. 826]. In Lackey v. State the effect of section 3a, art. 18, of the Constitution and section 539, Rev. Laws 1910, were considered in connection with the provisions of a charter adopted by Oklahoma City regulating the election of municipal officers, and in the opinion it was said: 'By this section the people of the state, in the exercise of their sovereign power and by means of their organic law, have delegated to the inhabitants of cities having a population of more than 2,000 the power to be exercised by such inhabitants at their option, to frame a charter for their own local government, which is to become the organic law of such government, and to supersede the laws of the state in conflict therewith, in so far only as they attempt to regulate merely municipal affairs.' And after calling attention to the fact that similar provisions were found in the constitution of several of the states, no two of which appear to be identical, and

noting the conflict in the decisions construing such provisions, this court approved the construction given by the Supreme Court of Missouri to section 16, art. 9, of the Constitution of that state, authorizing cities of more than 100,000 population to frame a charter for their own government, consistent with and subject to the Constitution and laws of that state, and, after rejecting the contention that the provisions of such charter must give way, where in conflict with the laws of the state in reference to matters that are purely municipal, the court continued: It is clear that the foregoing statute intends to provide that, wherever a freeholders' charter has been adopted under the provisions of the Constitution, and conflicts with any law of the state relating to municipal matters of cities of the first class, that the provisions of such charter shall prevail. * * *"

It therefore appears that the terms of the ordinance and the charter of the city of Tulsa providing for the issuance of the tax bill in suit was fully justified under the Constitution and laws of this state. The provisions of the ordinance and charter under which the assessment was levied provided for notice and a hearing as to the amount of the benefits to accrue prior to making the assessment, and that after this hearing the assessment should be made, and the amount thereof was made a lien on the abutting property according to the accruing benefits as found by the municipal authorities and it was made a debt against the owner of the property.

In the instant case the improvements have been made and the costs thereof ascertained and apportioned and the liability thereof fixed as contemplated by the law. The city has taken a bond from the contractor to repair and maintain the improvements for a period of five years. It therefore appears that the city has performed all of its duties in levying and assessing the burden of the improvements so made, and it does not appear that it has any further concern in the collection thereof. The duty of the city, under the law, was to ascertain in a fair and equitable way the amount of the burden and the costs of the improvements, and to apportion the same against the property according to the accruing benefits, and to issue to the contractor, as provided by its ordinance and charter, a tax bill in payment of his claim for making the improvements. The right of the contractor to enforce the collection of the debt thus created, or to assign the same, and the right of the assignee to enforce the payment of such debt in the manner provided by the ordinance and the charter, seems clear. No

good reason appears why the bank, as assignee of the contractor, cannot enforce the payment of such debt in the manner provided by the ordinance. It therefore appears that the demurrer to the petition was properly overruled.

Again, it is contended that the provisions in the tax bill for interest and attorney's fees, while authorized by the charter and the ordinance, were in excess of the power conferred by the Constitution, and therefore these provisions are ineffectual, and a recovery therefore unauthorized, and that the motion to strike from the petition allegations concerning these items was error. The question, so far as interest is concerned, is settled in this jurisdiction by the decision of this court in City of Norman v. Allen, 47 Okla. 74, 147 Pac. 1002, where the right to provide that assessments for street improvements may be made to bear interest at the rate of 7 per cent. per annum, after default in payment, and subsequent to the date of the passage of a legal assessing ordinance, was passed. This case followed the earlier case of Shultz v. Ritterbusch, 38 Okla. 478, 134 Pac. 961, where the same principal was announced and applied in sustaining the provisions of the statute authorizing assessment for street improvements to bear 7 per cent. interest "from date until maturity, and 18 per cent. from maturity until paid." Whether or not an attorney's fee may also be imposed is an open question, inasmuch as it has not been directly passed upon by our courts.

In California, Missouri, Indiana, Louisiana, and Maryland, and possibly other states, the right to impose an attorney's fee in such case has been sustained. Engebretsen v. Gay et al., 158 Cal. 30, 109 Pac. 880, 28 L. R. A. (N. S.) 1062, Ann. Cas. 1912A. 690; People v. Seymour, 116 Cal. 332, 76 Am. Dec. 521; State ex rel. Rosenblatt v. Kerr, 8 Mo. App. 125; U. S. Elect. Power & Light Co. v. State, 79 Md. 63, 28 Atl. 768; Church v. New Orleans, 107 La. 611. 32 South, 101; Brown. v. Central Bermudez Co., 162 Ind. 452, 69 N. E. 150; Pittsburg, C., C. & St. L. R. Co. v. Taber, 168 Ind. 419, 77 N. E. 741, 11 Ann. Cas. 808.

In the Engebretsen Case the syllabus is as follows:

"The Legislature may allow an attorney's fee against one whose delinquency makes necessary a proceeding to inforce a special assessment for public improvements against his property although no such fee is allowed in his **favor.**"

In the body of the opinion the court said:

"The nature of the proceedings is such that the expense of collecting the tax on property delinquent, if not recoverable against such property in the proceeding to enforce the tax, would fall in part on those who voluntarily pay their assessments, since contractors, in bidding upon street work, would be compelled to include in their estimates an additional amount sufficient to indemnify them against the probable further expense in this regard. Such expense should equitably be borne only by the property as to which such proceedings are rendered necessary by the deliquency of the owners. It would seem that the Legislature should have the power to provide for the payment of such additional expense by the property whose owners are responsible therefor."

In the Missouri case, supra, the court said in regard to these provisions that:

"It stands upon a like footing as any other provision for compelling the delinquent to bear the expenses incident to an enforcement of the state's claim for taxes."

In the Maryland case, supra, the court said:

"The second point involved is as to the costs and fees imposed and prescribed by the act of 1890 (chapter 559). About this we have no difficulty. The Legislature has the undoubted right to prescribe what costs shall be taxed in a case; and when an unsuccessful attempt is made to resist and defeat the collection of a just debt due to the state, the General Assembly may lawfully visit upon the defendant not only the costs usually taxed, but further costs by way of a fee to the attorney who represents the state. Such legislation is unfeniably within the powers of the General Assembly, and is neither oppressive nor unreasonable."

In the Brown Case, supra, the Supreme Court of Indiana said:

"A street assessment is laid by virtue of the power of the state, to tax, and we think that a statute providing for the allowance of an attorney fee on foreclosure in such a case can be upheld on the ground that the state may provide for a penalty if the delay of the property owner to discharge such an obligation renders it necessary to commence suit. The enactment upon this subject may be compared to the provisions of the statute made for the benefit of the purchasers at tax sale."

The theory of these decisions, it seems, is that, as may be done, where there is a default in the payment of ordinary taxes assessed against property, the Legislature has the right to impose upon those defaulting in the payment of such assessment for the improvements on streets a penalty which may include a reasonable attorney's fee. This

theory seems to be sound, and no good reason occurs to us why it should not be accepted, and the provision allowing attorney's fee in the tax bill in suit sustained. It is no serious objection to these provisions that an attorney's fee is not allowed to the property owner if successful in resisting the payment of the assessment, and therefore the grounds and reason for the decision of C., R. I. & P. R. Co. v. Mashore, 21 Okla. 275, 96 Pac. 630, 17 Ann. Cas. 277; and Oligschlager v. Stephenson, 24 Okla. 760, 104 Pac. 345, do not condemn this conclusion.

In the latter case the court said:

"The rule seems to be that, where the penalty has been imposed for some tortious or negligent act, the statute has generally, though not always, been sustained; but, on the contrary, where no wrongful or negligent conduct was imputed to the defeated party, any attempt to charge him with a penalty has not prevailed."

The conclusion above announced, it will be observed, sustains the allowance of an attorney's fee upon the ground of the negligence of the property owner, that is, for his failure to pay the assessment, and thereby being the direct cause and occasion for creating this additional expense. We therefore hold that it was not error for the court to overrule the motion to strike.

Again it is contended that it was error to deny the request for a jury trial. There are cited in support of this assignment sections 4993 and 5016, Rev. Laws 1910. It is sufficient to say in reply to this citation and argument that, the instant case being an equitable action, the defendant was not entitled to a jury trial as a matter of right, and that it was not error to deny the request for a jury. City of Chickasha v. O'Brien, 58 Okla. 46, 159 Pac. 282.

There are some additional assignments that do not seem to require special consideration, inasmuch as the questions raised by them have been adjudicated adversely to the contention of the plaintiff in error by the decisions of this court. For instance, it is contended that the property was the homestead, and therefore not subject to a lien for this assessment, and that the assessment, was excessive and arbitrarily made, etc.

The trial court upon the consideration of the evidence rendered judgment for the amount of the tax bill and interest, and $60 attorney's fee, and established a lien against the property for the amount thereof and ordered the same sold to satisfy the judgment and costs. There was no personal judgment rendered against the plaintiff in error.

No prejudicial error in the proceedings having been shown, the judgment appealed from should be affirmed.

By the Court: It is so ordered.