Quill *v.* The City of Indianapolis *et al.*

Filed June 6, 1890.

---

No. 15,360.

QUILL *v.* THE CITY OF INDIANAPOLIS ET AL.

MUNICIPAL CORPORATION.—*Street Improvement.*—*Barrett Law.*—*Notice.*— *Committee to Hear Objections.*—Section 2 of the act of March 8th, 1889, entitled "An act concerning powers and duties of cities and incorporated towns, * * * providing the mode and manner of making street and alley improvements," etc., which provides for notice to the property-owners of the time and place where they may make objection to the necessity of the improvement contemplated, does not require the appointment of a committee to hear the objections, or that there should be any determination of the rights of the objectors. It simply contemplates that no action shall be taken by the common council after resolving to make the improvement until notice is given, and an opportunity afforded the property-owners to present for the consideration of the council such objections as they may make to the necessity for the construction of the work. This object is accomplished by requiring objections to be filed with the clerk to be by him laid before the common council.

SAME.—*Constitutional Inhibition Limiting Indebtedness of Cities.*—*Bonds Issued in Pursuance of Barrett Law not Indebtedness Within.*—Bonds or certificates issued in pursuance of the provisions of the act, do not create an indebtedness within the inhibition of article 13 of the Constitution, declaring that no municipal corporation shall become indebted to an amount in excess of two per cent. of its taxable property. The bonds issued by the city for the purpose of raising money with which to pay for the improvement, or issued to the contractor in payment for the work, bear the name of the street or alley improved or sewer constructed, and are payable out of the special street improvement fund to be accumulated from assessments made against the property benefited; and hence no indebtedness arises against the city.

SAME.—*Debt.*—*Essentials of.*—It is essential to the idea of a debt that an obligation should have arisen out of a contract, express or implied, which entitles the holder thereof unconditionally to receive from the promisor a sum of money which the latter is under a legal or moral duty to pay without regard to any future contingency.

Quill v. The City of Indianapolis et al.

SAME.—*Assessments.—How Upheld.*—Assessments for street improvements are upheld on the ground that the adjacent property upon which the cost of the improvement is assessed is enhanced in value to an amount equal to the sum assessed against it, and that the owners have received peculiar benefits which the citizens do not share in common. The municipality, as such, is not benefited by the improvement, and there is, hence, under the law in question, neither a legal nor moral obligation to pay.

SAME.—*Street and Alley Crossings. — Improvement of.—Payment in Cash by City.*—The municipal corporation becomes liable to pay in cash the expense for so much of street and alley improvements as shall be occupied by the street and alley crossings, upon the completion and final estimate of the work, and hence no debt results from such improvement.

SAME.— *Waiver of Irregularities in Assessment.—Provision Relating to.—Constitutionality of.*—A property-owner who, in consideration of the right to pay his assessment in semi-annual instalments, has agreed that he will waive all irregularities in the assessment, can not question the validity of the provision of the act that "no suit shall lie to restrain or enjoin the collection of such assessment," and that the validity of such assessment shall not be questioned. Such provision applies only to those persons who, in consideration of their right to pay their assessments in semi-annual instalments, agree in a writing, to be filed with the city clerk, that they will not make any objection to the legality or regularity of their respective assessments, and is constitutional.

From the Marion Circuit Court.

A. Zollars, C. S. Denny and W. F. Elliott, for appellant.

W. L. Taylor, for appellees.

MITCHELL, C. J.—It is shown by the complaint, upon which all the questions in the present case arise, that the plaintiff, Thomas F. Quill, is a resident taxpayer of the city of Indianapolis, and the owner of a certain described lot in one of the additions to the city. It appears that the common council and board of aldermen, in August, 1889, assuming to proceed under the authority of the act of March 8th, 1889, entitled "An act concerning powers and duties of cities and incorporated towns, * * * providing the mode and manner of making street and alley improvements, and building sewers, * * and permitting cities and incorporated

towns to issue street and sewer improvement bonds," passed an ordinance for the improvement of a certain designated street in the city on which a lot owned by the plaintiff abutted. The contract for the improvement was duly awarded to Robert Kennington, who completed the work accordingly, after which the city engineer made and reported his final estimate of the total cost of the improvement and apportioned the amount to the several lots and parcels of land bordering on the street, as required by section 817, Elliott's Supp., being section 6 of the above act. The report having been presumably adopted, and an assessment made by the proper authorities after due notice, it is averred that the contractor threatened to enforce payment of the amount assessed against the plaintiff's lot, and being unable to pay, it is alleged that the plaintiff, in order to prevent the sacrifice of his property, executed, under protest, a written agreement, in which he stipulated, in effect, that, in consideration of having the right to pay the amount assessed against his lot in instalments, he would make no objection to the legality or regularity of his assessment, etc.

It is also averred that in making the improvement the city incurred a debt of $97 for that portion thereof occupied by street and alley crossings, which it is alleged is in violation of the Constitution of the State, and that the corporation is about to issue bonds as provided in the act mentioned to cover the cost of the improvement. After setting out the amount or value of the taxable property within the city, and the present indebtedness, it is averred that the indebtedness already exceeds two per centum of the value of all the taxable property. It is also averred that while the property-owners were duly notified as provided in section 2 of the act, of the time and place where they might make objection to the necessity of the improvement, no committee was appointed to hear the objections, which, according to the direction of the common council, were required to be filed with the city clerk. It is contended that the giving of such a

notice was not a compliance with the provisions of the act, because no committee was appointed to hear and determine the validity of the objections. It is also contended that the city has no power to issue the bonds provided for in the act, because its present indebtedness exceeds the limit fixed by article 13 of the Constitution of the State, and that so far as the act assumes to authorize the issuing of bonds without regard to the amount of the existing indebtedness it is unconstitutional.

Elliott's Supp., section 813, requires the common council, whenever it deems it necessary to make any of the improvements authorized by the act, to declare the necessity therefor by resolution, and also to state the kind, size, location, and terminal points thereof. Ten days' notice of the passage of the resolution is required to be given by two weeks' publication in some newspaper of general circulation; and it is also required that the notice thus published shall state the time and place where the property owners along the line of the proposed improvement can make objections to the necessity for the construction thereof. This statute contemplates the publication of notice for two successive weeks, ten days prior to the day fixed for making objections; that is, the first publication must have been made twenty-four days before the time therein fixed. The statute does not require or contemplate the appointment of a committee to hear the objections, or that there should be any determination of the rights of the objectors. It simply contemplates that no action shall be taken by the common council after resolving to make the improvement until notice is given, and an opportunity afforded the property owners to present, for the consideration of the council, such objections as they may make to the necessity for the construction of the work. It is designed to prevent the city authorities from entering inconsiderately upon the construction of expensive improvements, without affording the property owners, who are, in the end, to pay for them, the opportunity to present their

objections at the outset, which are intended to be rather as advisory to the common council than otherwise. This purpose could be accomplished as well by requiring objections to be filed with the clerk, to be by him laid before the common council, as in any other way. The right of the property owners to appear before the common council for the purpose of urging the validity of any objections filed with the clerk is in no way abridged or impaired. The right to a hearing is secured to each property-owner by another provision of the act. We discover no valid objection to the notice.

It is conceded that the present bonded indebtedness of the city exceeds the limit fixed by the Constitution, but it is contended that the cost of improving the street and alley crossings, payable by the city, must and will be paid in cash, and that the bonds authorized by the act in question are merely improvement bonds, for the payment of which the city is not liable, and that they are, hence, not an indebtedness of the city within the contemplation of the Constitution. So much of article 13, of the State Constitution, as is germane to the subject under examination, declares that "No political or municipal corporation in this State shall ever become indebted, in any manner or for any purpose, to an amount in the aggregate exceeding two *per centum* on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporation, shall be void."

It becomes necessary to determine whether bonds or certificates issued in pursuance of the provisions of the act above mentioned, create an indebtedness within the inhibition of article 13. It is essential, therefore, that we consider the act and ascertain its scope, purpose and effect. An examination of the statute discloses at once that the entire cost and expense of constructing any work or improve-

ment provided for therein, for the payment of which bonds or certificates may be issued, is to fall primarily and exclusively upon the property benefited, except only for such part of the work as shall be occupied by street and alley crossings, the expense of which the corporation is to pay. Provision is made whereby, during the progress of the work, estimates may be made from time to time of the amount of work done by the contractor, and the amount of the estimates, less a reasonable percentage to secure the completion of the contract, may be paid out of the corporate treasury, but the amount of such estimates is made a lien upon the several parcels of ground upon which they are assessed in favor of the municipality and the owner of the certificates or bonds which may afterwards be issued. Elliott's Supp., section 816. Of course the money thus advanced by the city does not constitute a debt against the city. It is simply money advanced by the city to be repaid by the property-owners.

The statute provides that when the work is completed a final estimate of the total cost thereof is to be made and distributed according to a rule prescribed against each lot or parcel of ground bordering on the street or alley improved. This is to be reported to the common council of the city. Notice to, and a hearing by, each person feeling himself aggrieved is provided for, and after the report, with such alterations or amendments as may be made, is adopted, the common council is required to assess against the several lots or parcels of ground, the several amounts which should be assessed on account of the improvement. The amounts so assessed become a lien upon the several lots or parcels of ground, and are to be placed on the city tax duplicate and charged against the several lots, and become payable in ten per cent. instalments, to be collected as other taxes are collected, with six per cent. interest, to be calculated from the date of the final estimate, payable semi-annually. It is provided that the proceeds arising from the assessments so made, when collected, shall constitute a special fund for the pay-

ment of the costs of the improvement, and the bonds and certificates thereafter provided for. Provision is made for the issuance of bonds by the city for the purpose of raising money with which to pay for the improvement, or bonds or certificates may be issued to the contractor in payment for the work, but in either case it is required that the bonds shall bear the name of the street or alley improved, or sewer constructed, and that they shall be payable out of the special fund provided for in the act.

Without summarizing further, it is enough to say the remedy of the holders of the bonds or certificates is confined exclusively to the special fund provided for and to the collection of assessments by enforcing the lien upon the lots or parcels of ground assessed with the cost of the improvement. The city is in no way liable for the payment of the bonds except out of the special fund to be accumulated from assessments made against the property benefited. According to the scheme promulgated in the statute, in case the assessments are paid without delinquency, it is impossible for a single bond or certificate to mature in advance of the accumulation of a special fund devoted exclusively to its payment.

If the assessments become delinquent the remedy of the holders of the bonds or certificates is confined to the property; there is no liability against the city. The special fund provided for and the property are the sources from which the holders of the bonds and certificates must receive their pay, the city authorities acting merely as an agency for making and collecting the assessments, and as the custodian of the fund when the assessments are collected. In this they do not act as the agents of the city, but as special agents, to accomplish a public end. *Board, etc.,* v. *Fullen,* 111 Ind. 410.

A fair interpretation of the statute requires that the character of the bonds, and the fact that they are payable out of a special street improvement fund, shall appear upon the face of the paper, thus making it apparent to the world that they

are not to be regarded as the obligations of the corporation. While the common council and officers of the city are designated as the instruments to be used in executing the scheme devised, it is apparent all the way through that the entire expense of constructing an improvement for which bonds may be issued is to be borne exclusively by the property benefited.

In *Strieb* v. *Cox*, 111 Ind. 299, it was held that bonds issued by the board of county commissioners for the purpose of raising money to pay for the construction of a free gravel road, do not constitute an indebtedness against the county within the inhibition of article 13 of the State Constitution. The principles which uphold that decision fully sustain our conclusion in this. See, also, *Board, etc.*, v. *Hill*, 115 Ind. 316.

Merely issuing bonds or certificates which show upon their face that they are issued in the course of constructing a street improvement, and that they are payable out of a special fund to be derived from assessments upon the property bounding on the street, is very far from creating a debt against the city. An indebtedness can not arise unless there is either a legal, equitable or moral obligation to pay a sum of money to another, who occupies the relation of creditor, and who has a legal or moral right to call upon or constrain the debtor to pay. *State, ex rel.*, v. *Hawes*, 112 Ind. 323. It is not always essential, in order to the existence of an indebtedness, that there should be an absolute legal right to coerce payment, as in that sense the State could never become indebted. *Mayor, etc.*, v. *Gill*, 31 Md. 375. It is, however, essential to the idea of a debt that an obligation should have arisen out of a contract, express or implied, which entitles the holder thereof unconditionally to receive from the promisor a sum of money which the latter is under a legal or moral duty to pay, without regard to any future contingency. Assessments for street improvements are upheld on the ground that the adjacent property upon which the cost

of the improvement is assessed, is enhanced in value to an amount equal to the sum assessed against it, and that the owners have received peculiar benefit which the citizens do not share in common. *Heick* v. *Voight,* 110 Ind. 279 ; *Ross* v. *Stackhouse,* 114 Ind. 200 ; *Hammett* v. *Philadelphia,* 65 Pa. St. 146 ; *Chamberlain* v. *City of Cleveland,* 34 Ohio St. 551.

The municipality, as such, is not benefited by the improvement, and there is, hence, under the law in question, neither a legal nor moral obligation to pay. The moral and legal duty of the city to pay depends upon the contingency or condition of the special fund out of which payment is to be made. If the officers of the city discharge the duties devolved upon them by the statute, their power over the subject is exhausted. They are nowhere authorized to create an indebtedness against the city as such.

In *Sackett* v. *City of New Albany,* 88 Ind. 473, speaking in reference to the constitutional inhibition now under consideration, this court said : " By ' indebtedness,' in this connection, we mean an agreement of some kind by the city to pay money where no suitable provision has been made for the prompt discharge of the obligation imposed by the agreement." Within the definition above stated it is abundantly clear that no indebtedness can possibly result against a city from the issuance of street improvement bonds.

In *City of Valparaiso* v. *Gardner,* 97 Ind. 1, the general conclusion was reached, after most thorough and careful consideration, that in case the current resources of a city are sufficient for the payment of a debt when it comes into existence, a contract to supply water to a city, under which debts against the city may arise from time to time, covering a period in the future, was not within the inhibition of the Constitution. These cases are more than sufficient to vindicate our conclusion that any bonds which can be issued under the law in question are not affected by the Constitutional inhibition.

As respects the expense for so much of street and alley improvements as shall be occupied by the street and alley crossings, it is fairly apparent from the whole scope and tenor of the law that the corporation becomes liable to pay that in cash upon the completion and final estimate of the work, or as estimates therefor may be made from time to time. This being so no debt results on that account.

It is said, however, that so much of section 819 as provides that " no suit shall lie to restrain or enjoin the collection of such assessment," and that the validity of such assessment shall not be questioned, is unconstitutional, because it is an attempt to deprive the land-owner of all substantial remedy for the protection of his property, thereby in effect depriving him of his property without due process of law.

While we are satisfied that it would be within the power of the Legislature to enact that one who had stood by while an improvement was being made, under color of statutory authority, until the work was substantially completed, and until his property had received the benefit of the money expended, should not thereafter question the validity of the assessment, we are not required to go to that extent in the present case. *Prezinger* v. *Harness,* 114 Ind. 491; *Ross* v. *Stackhouse, supra.*

It is apparent from the connection in which it occurs, that the above provision only applies to those persons who, in consideration of their right to pay their assessments in semi-annual instalments, agree in a writing, to be filed with the city clerk, that they will not make any objection to the legality or regularity of their respective assessments. Such an agreement is required by section 821 as the condition upon which the property-owner may secure the benefit of the instalment scheme for which the act provides. When the work is completed the property-owner has his election to refuse to sign the agreement provided for, and stand upon his common law rights in respect to contesting the validity of the assessments made against him, in which case the assess-

ment becomes due when made, or he may waive any irregularities, and secure the benefit of ten years' time by signing an agreement to that effect. Since, as we have seen, the law makes no provision whereby the bonds go out with any credit from the municipality issuing them, this feature of the law puts the securities or bonds beyond question, by giving them the absolute credit of the property upon which they are made a lien, of the same degree as taxes are a lien, and removing all question as to the validity of the assessments.

While, as we have said, we do not doubt the power of the Legislature to incorporate into the statute the feature complained of, even without the agreement, for it is little else than the affirmation of a common law principle, there is no room to question its validity as applied to one who has signed the agreement provided for.

What has been said disposes of all the questions argued or involved in the record, and as we find no ground for reversing the ruling of the learned court from which the appeal is prosecuted, the judgment is affirmed, with costs.

Filed Feb. 8, 1890; petition for a rehearing overruled June 6, 1890.